JUHASZ ET AL., *v.* QUIK SHOPS, INC., APPELLEE; BRUELL, APPELLANT.

[Cite as Juhasz v. Quik Shops, Inc. (1977),
55 Ohio App. 2d 51.]

(No. 8387—Decided May 18, 1977.)

*Mr. Stephen D. Hardesty,* for Charles Dennis Juhasz et al.

*Mr. Ralph W. Ross,* for appellant.

*Mr. Edward Kancler,* for appellee.

BELL, J. On August 16, 1969, C. T. Bruell, defendant-appellant (hereafter Bruell), leased certain realty to American Seaway Food, Inc. (hereafter Seaway) to be used as a supermarket. Seaway then assigned this written lease to its affiliate, Quik Shops, Inc., defendant-appellee (hereafter Quik Shops), to be used for the same purpose. Quick Shops then subleased the same property to Charles and Christina Juhasz, plaintiffs, to be used as a karate school. Plaintiffs claim the right of occupancy to the building by virtue of this sublease and further claim that Bruell denied them that right. They brought suit against both Quik Shops and Bruell; the former action alleged a breach of contract and the latter alleged an interference with plaintiffs' business, a tort claim. Bruell denied the allegations of plaintiffs and of Quik Shops (which filed an answer and cross-complaint against Bruell).

After the opening statements of each of the parties, the court dismissed Quik Shops as a party. Thereafter, the court also directed a verdict in favor of plaintiffs against Bruell as to liability. On reconsideration, the court modified that ruling by not directing a verdict and further held (1) as a matter of law, the sublease between plaintiffs and Quik Shops was valid and (2) consequently, notwithstanding Bruell's objections, plaintiffs had a right of occupancy in the building.

The case proceeded to trial and a judgment was rendered in favor of plaintiffs against Bruell. Bruell appeals and asserts four claims of error; two pertain to the court's actions immediately after the opening statements, one concerns the charge and the last concerns the issue of the weight of the evidence.

## I.

Assignment of error one claims that the court erred

in directing a verdict of dismissal in favor of Quik Shops after the opening statements of counsel. Bruell claims this action is contrary to the law of this state and prejudicial to his cause. We agree.

The transcript of proceedings indicates that, after some discussion between the court and counsel (part of which is off the record), the court found, as a matter of law, that the lease executed between Seaway and Bruell (and later, with Bruell's approval, assigned to Quik Shops) did not limit the use of the building in question to a supermarket, grocery or similar use. The court ruled specifically that clause 4A of the lease does not proscribe the use to which the building can be put.

The dialogue between the parties and the court fails to disclose the court's consideration of the wording and reasoning of other portions of the lease—namely, paragraphs 4B and 14B. These should have been considered collectively with 4A in reaching any conclusion on the meaning of the terms of the lease. If the terms can be fairly construed as being restrictive to a use for a grocery or similar merchandising unit, the dismissal of Quik Shops as a party, in combination with the court's other ruling that the sublease was valid, is prejudicial to Bruell's rights. Any rights assumed by plaintiffs under the sublease are inevitably those flowing from the rights of the original parties under the original lease.

The lease paragraphs to which we refer are:

"4. A. The leased premises may be used for the purposes of selling, distributing or otherwise handling or dealing in any or all goods, wares, merchandise, commodities or services such as are then normally sold or dealt in in a supermarket;

"B. The Lessor shall not operate or permit any person, firm or corporation other than the Lessee to operate any business similar to a supermarket or a convenience store on or about the tract of land on which the Shopping Center is situated, or on or about any other tract of land or lot in which the Lessor now has or shall at any time during the term of this Lease have any interest and which

is located within One (1) Mile from the tract of land on which the Shopping Center is situated, excepting only those particular business establishments which are now being operated on such tracts of land or lots. The foregoing provisions of this Paragraph *B*. shall be convenants running with the land.

"14. A. * * *

"B. The Lessor further represents, covenants and warrants that there is no legal restriction or limitation of any kind whatsoever on the use of the leased premises, or any part thereof, for any of the purposes referred to in Paragraph *4.A.* The Lessor further agrees that in the event that any restriction or limitation of any kind whatsoever on the use of the leased premises, or any part thereof, for any of the aforesaid purposes, shall be or become effective at any time during the term of this Lease, the Lessee shall have the right to terminate this Lease by giving written notice of such termination to the Lessor at any time while such restriction or limitation is in effect; in the event of any such termination the Lessee shall be released and discharged from any and all liabilities and obligations under this Lease from and after the effective date of such termination as set forth in said notice."

The record of the trial proceedings indicates that, in interpreting the meaning of paragraph 4A, the court properly considered the leading case law in this state. Paragraph 2 of the syllabus of *Loblaw, Inc.*, v. *Warren Plaza, Inc.* (1955), 163 Ohio St. 581, reads:

"The general rule, with respect to construing agreements restricting the use of real estate, is that such agreements are strictly construed against limitations upon such use, and that all doubts should be resolved against a possible construction thereof which would increase the restriction upon the use of such real estate."

The *Loblaw* court cites with approval, *Frederick* v. *Hay* (1922), 104 Ohio St. 292, and *Hunt* v. *Held* (1914), 90 Ohio St. 280. Both of these cases require the construction of instruments conveying land to be that construction

which is least restrictive of the free use of the property in question. Following and approving *Loblaw, supra,* is *Bevy's Dry Cleaners & Shirt Laundry, Inc.,* v. *Streble* (1965), 2 Ohio St. 2d 250. *Bevy's,* however, carefully distinguishes words of description from words of restriction, in paragraph 1 of the syllabus, as follows:

"Words merely descriptive of the purpose for which premises are leased, when unaccompanied by express words of limitation or restriction to that purpose, will not be construed, at the instance of the lessors, as proscribing the use of the premises for purposes similar or related to the described purposes."

In the instant case, the trial court draws no distinction between (1) interpreting the lease to allow the premises to be used for any and all uses, (2) for grocery or supermarket uses, or (3) a use similar to the use mentioned in paragraph 4A though not strictly and singly that particular use only. *Dicta* in *Bevy's, supra* at 254, supports our contention and reads:

"We go no further than to hold that *uses similar or related to the general scope of the described use will not be prohibited* as between the lessor and the lessee. We can not speculate on a solution to the problem presented if, for example, Speedi elects to operate on its premises a foundry, slaughterhouse or some other instrumentality inconsistent with the type of construction, the character of the building or the adjacent properties." (Emphasis added.)

We hold that a factual determination should have been made regarding the nature, character and construction of the building and the adjacent properties before determining the non-restrictive character of the lease and the dismissal of Quik Shops. We further hold that all of the three paragraphs of the lease previously cited must be read together to correctly interpret same. In addition, the court must also consider the questions of who drafted the instrument and who relies upon it to their interest in the litigation. We need not point out the diametrically opposite uses discussed, a supermarket and a karate school. In this case, none of these standards were applied

before directing the verdicts after the opening statement and before any evidence was offered.

For the foregoing reasons, Bruell's first assignment of error is meritorious.

The terms of the judgment order dismissing Quik Shops do not comply with the court's order of dismissal and cannot stand as a judgment in favor of Quik Shops against Bruell. The transcript fails to reveal any occasion wherein the court made the order reflected in the aforementioned judgment order.

## II.

Bruell's second assignment of error alleges that the trial court improperly directed a verdict in favor of plaintiffs against him on a contract basis when, in fact, the action was grounded in tort. Factually, the court reversed its own decision to direct the verdict except on the validity of the lease. Only as it relates to our previous discussion concerning assignment of error one is this contention of merit.

## III.

Defendant's third assignment of error complains that the trial court erred in its charge on issues of law and in removing certain issues of fact from the jury. We agree.

Having already discussed the matters pertaining to the interpretation of the lease, we will not allude further to those portions of the charge dealing with that subject. After discussing with the jury the question of the lease and sublease, the court further charged as follows:

"* * * [A]s a matter of law that Defendant had no legal right to dispossess the Plaintiffs of the premises under the terms of the lease and assignment and sublease. The Court further finds that the Defendant did dispossess the Plaintiffs unlawfully from the premises and is hence liable for any damages proximately caused by such interference of the Plaintiffs' use of the premises. * * *"

We hold that the action of the court in so charging constitutes error prejudicial to the defendant Bruell.

The tort generally know as "business interference"

forms the basis of plaintiffs' cause of action against the defendant Bruell. The basic principle of such an action is that one who, without a privilege to do so, induces or otherwise purposely causes a third party not to enter into, or continue, a business relationship with another, or perform a contract with another is liable to the other for the harm caused thereby. 4 Restatement of Torts 63, Section 766 (1939). This principle has been applied with favor in Ohio in *Reichman* v. *Drake* (1951), 89 Ohio App. 222, and *Pearse* v. *McDonald's* (1975), 47 Ohio App. 2d 20.

The defendant raised the defense of justification regarding his acts in keeping plaintiffs from the property without a court order of some type. The defense raises then the issue of privilege. 4 Restatement of Torts, *supra,* establishes as guidelines for determining that issue, the following:

"§767. Factors in Determining Privilege.

"In determining whether there is a privilege to act in the manner stated in §766, the following are important factors:

"(a) the nature of the actor's conduct,

"(b) the nature of the expectancy with which his conduct interferes,

"(c) the relations between the parties,

"(d) the interest sought to be advanced by the actor and

"(e) the social interests in protecting the expectancy on the one hand and the actor's freedom of action on the other hand."

"§773. Privilege to Assert Bona Fide Claim.

"One is privileged purposely to cause another not to perform a contract, or enter into or continue a business relation, with a third person by in good faith asserting or threatening to protect properly a legally protected interest of his own which he believes may otherwise be impaired or destroyed by the performance of the contract or transaction."

In addition to Ohio cases dealing with this subject, we also allude to *Hardin* v. *Majors* (Civ. App. 1923), 246

S. W. 100, 102, which speaks of this privilege in the following manner:

"* * * [A] party to or interested in a contract may, by legal proceedings or otherwise in good faith, interfere with the execution of the contract where there is a *bona fide doubt as to his rights under it.* * * *" (Emphasis added.)

We hold that to conclude that the defendant is liable for business interference, a finder of facts must find that: (1) defendant's conduct interfered with the business rights of the plaintiffs, and (2) taking into consideration the situation and relationship of the parties, such conduct on the part of the defendant lacked any privilege as defined above. When the court directed this issue, the jury was precluded from determining issues of fact necessary to a fair determination. The issue of business interference, including the question of privilege, should be submitted to the jury.

IV.

We have completely reviewed the transcript of proceedings concerning the trial court's judgment and the verdict of the jury as to damages. We find no other error except those previously discussed.

Therefore, we reverse and remand this cause to the trial court for a new trial in accordance with this decision and journal entry.

*Judgment reversed.*

MAHONEY, P. J., and VICTOR, J., concur.