**William DOUGHERTY, Plaintiff-Appellant,**

v.

**PARSEC, INC.; Truck Drivers, Chauffeurs & Helpers, Local Union # 100; Budco Group, Inc., Seaboard System Railroad, Defendants-Appellees.**

No. 86–3482.

United States Court of Appeals, Sixth Circuit.

Argued April 27, 1987.

Decided July 22, 1987.

Paul H. Tobias (argued), David Torchia, Tobias & Kraus, Cincinnati, Ohio, for plaintiff-appellant.

Harold S. Freeman (argued), Dinsmore & Shohl, Jonas Katz, George E. Yund, Cincinnati, Ohio, for defendants-appellees.

Before ENGEL and KRUPANSKY, Circuit Judges, and GILMORE,[*] District Judge.

ENGEL, Circuit Judge.

Plaintiff William Dougherty appeals a summary judgment entered against him and in favor of defendant Seaboard System Railroad, and certified as final under Rule 54(b) of the Federal Rules of Civil Procedure. In certifying the appeal, Senior United States District Judge David S. Porter made a thorough statement in support of his finding that there was "no just reason for delay." *See Solomon v. Aetna*, 782 F.2d 58 (6th Cir.1986); *COMPACT v. Met-*

---

[*] The Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation.

*ropolitan Government of Nashville and Davidson County,* 786 F.2d 227 (6th Cir. 1986).

Prior to the underlying litigation, Mr. Dougherty had been employed as a crane operator by the defendant Parsec, Inc. Parsec and the defendant Local 100 of the Teamsters Union were parties to a collective bargaining agreement which was applicable to Dougherty's employment and provided that plaintiff could be terminated only for "just cause." The agreement contained the usual provisions for processing of grievances, including the usual steps requisite to proceeding to a hearing before a joint committee of the Teamsters and members of the trucking industry.

In his complaint, Dougherty asserted that on or about June 27, 1985, Parsec discharged him from his employment at the request of Seaboard. He alleged that Seaboard brought about his discharge because he had complained to OSHA concerning certain unsafe work conditions which Seaboard allowed to exist on its premises. Plaintiff at the time had been required to carry on part of his duties on Seaboard's premises. Parsec denied that it was in any way motivated by any complaint of Seaboard, denied that his discharge was motivated by a retaliation for his "ringing the bell" on Seaboard, and instead asserted that he had been properly discharged for just cause.

A grievance protesting plaintiff's discharge was taken to a hearing before the joint committee, and the committee upheld the discharge. Plaintiff alleges that the committee was biased against him and that the union was negligent in presenting his grievance. The complaint requests relief under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, for breach of the collective bargaining agreement on the part of the employer, and also for breach by the union of its duty of fair representation. Plaintiff also appended a claim against Seaboard for tortious interference with his contractual relationship with Parsec.

In its motion for dismissal Seaboard argued first that the tortious interference claim was preempted by section 11(c) of the Occupational Safety and Health Act, 29 U.S.C. § 660(c). This section, which prohibits retaliatory actions against individuals who make complaints to OSHA, does not create a private right of action. *Taylor v. Brighton Corp.,* 616 F.2d 256 (6th Cir. 1980). As a backup position, Seaboard also contended that under *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), the tortious interference claim was preempted by section 301 of the Labor Management Relations Act. Judge Porter accepted Seaboard's second argument, and we fully agree. A copy of Judge Porter's memorandum and order of May 9, 1986 is attached hereto as Appendix A.

While acknowledging that the issue was not free from doubt, Judge Porter concluded that a fair reading of *Allis-Chalmers* was that a tort claim under state law is preempted by section 301 if that claim is "inextricably intertwined with consideration of the terms of the labor contract." *Id.* at 213, 105 S.Ct. at 1912. Judge Porter observed that some of the public policies served by preemption would not necessarily be endangered by permitting plaintiff to proceed on the pendent claim, and Judge Porter also acknowledged that such a cause of action can exist under Ohio law, *see Heheman v. E.W. Scripps Co.,* 661 F.2d 1115 (6th Cir.1981); *Cincinnati Bengals, Inc. v. Bergey,* 453 F.Supp. 129 (S.D. Ohio 1974). However, Judge Porter also stated: "Regardless of how the tortious interference with a contract claim is defined, the terms of the labor agreement will have to be scrutinized to determine if Seaboard induced its breach." We agree with Judge Porter that his conclusion is reinforced by the cases cited by Seaboard, such as *Satterfield v. Western Electric Co.,* 758 F.2d 1252 (8th Cir.1985). He concluded that even if plaintiff had filed separate actions in state and federal courts, such a procedure would have an improper impact upon national labor policy and the interest of Congress in the speedy and uniform administration of national labor law under the National Labor Relations Act. Again, we agree. The only contract with which any interference could be charged is

the collective bargaining agreement. An interference claim could not exist in the absence of such agreement, which in turn is exclusively to be interpreted under federal law.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

GILMORE, District Judge (dissenting):

I respectfully dissent from the majority opinion. In this case, William Dougherty appeals a summary judgment entered against him in favor of one of the defendants, Seaboard System Railroad. The district judge certified the judgment as final pursuant to Fed.R.Civ.P. 54(b). The issue is whether Dougherty can maintain an action against Seaboard Railroad System in light of the preemption provisions of Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

**I**

This is a labor dispute arising out of the firing of William Dougherty by his employer, Parsec. He has charged Parsec with violation of the collective bargaining agreement; his union, the Truck Driver, Chauffeurs and Helpers Local Union No. 100 (Teamsters), with violation of the duty of fair representation, and a third-party customer of Parsec, Seaboard System Railroad (Seaboard), the appellee, with tortious interference with a labor contract. The district court granted Seaboard's motion to dismiss, ruling that Dougherty's tort claim was preempted by federal labor law, and that the claim could not be maintained under federal law because Seaboard was not a signatory to the labor contract between Parsec and the Teamsters.

Parsec performs services for Seaboard by loading and unloading railroad cars. Dougherty, a Teamster, was employed by Parsec as a crane operator. Pursuant to a collective bargaining agreement with Parsec and the Teamsters, Parsec could fire Dougherty only for just cause. Seaboard was not a party to this contract, and was not Dougherty's employer. In April 1985, Dougherty complained to the Occupational

Safety and Health Administration (OSHA) about allegedly hazardous working conditions at Seaboard. In June 1985, Parsec fired him.

Dougherty alleges that Seaboard requested he be fired in retaliation "for filing a complaint with OSHA, and for exercising his right of free speech and his right to complain concerning Seaboard's unwarranted interference with Company (Parsec)-Union relations." Complaint, ¶ 11 Joint Appendix p. 5.[1] Dougherty claims he was fired by Parsec in violation of the "just cause" clause in the contract, and that Seaboard's alleged request that he be fired was a major factor in Parsec's decision.

Seaboard moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) on the alternative grounds that (1) private parties cannot enforce OSHA's prohibition on retaliatory discharges against individuals who complain to OSHA and (2) that the tortious interference with contract claim is preempted by federal labor law. The trial judge ruled in Seaboard's favor on the preemption issue, and did not address whether Dougherty's claims against Seaboard were barred by OSHA. Dougherty appeals the preemption decision. Seaboard argues on appeal that even if the state tort claim is not preempted by labor law it is barred by OSHA.

**II**

The District Court properly ruled that Dougherty could not bring a tortious interference with contract claim under Section 301 of the Labor Management Relations Act, which provides:

Suits for violation of contracts between an employer and a labor organization representing employees ... may be brought in any district court of the United States having jurisdiction of the parties ...

29 U.S.C. § 185(a). A district court does not have subject matter jurisdiction under Section 301 over a nonsignatory to a collective bargaining agreement where the rights or duties of the nonsignatory party

---

1. Section 11(c) of the Occupational Safety and Health Act prohibits retaliatory actions against individuals who complain to OSHA. 29 U.S.C. § 660(c).

are not stated in the terms and conditions of the contract. *Service, Hospital, Nursing Home and Public Employees Union, Local No. 47 v. Commercial Property Services, Inc.* 755 F.2d 499, 506 (6th Cir.), *cert. denied,* 474 U.S. 850, 106 S.Ct. 147, 88 L.Ed.2d 122 (1985) *(S.E.E.U.).* S.E.E.U. held that a district court erred in dismissing a pendent state law tortious interference claim against a nonsignatory on the merits, ruling that the claim should have been dismissed without prejudice for want of jurisdiction.[2] Thus, the district court in this case properly held that Dougherty could not maintain his action against Seaboard pursuant to Section 301. However, Dougherty and Seaboard are of diverse citizenship, permitting federal courts to exercise subject matter jurisdiction over these parties. 28 U.S.C. § 1332(a).

The Supreme Court has held that, where the resolution of a state law claim is substantially dependent on the analysis of the terms of a collective bargaining agreement, the claim must be treated either as a Section 301 claim or dismissed as preempted by federal labor law. *Allis-Chalmers v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). The central issue in this case is whether a state law claim of tortious interference with a labor contract against a party who has not signed the contract is preempted. I do not think it is.

In *Lueck,* an employee brought a state law tort claim (in state court) against an employer and insurer for the bad faith handling of an insurance disability claim. The disability plan had been collectively bargained for, and the collective bargaining agreement established a three-part procedure to settle disability grievances, administered by a joint union-employer committee. The Supreme Court held that the claim was preempted by federal labor law even though the action sounded in tort.

The interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation. Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort. Any other result would elevate form over substance and allow parties to evade the requirements of § 301 by re-labeling their contract as claims for tortious breach of contract.

*Lueck,* 471 U.S. at 211, 105 S.Ct. at 1911. The Court continued:

Our analysis must focus, then, on whether the [state] tort action ... as applied here confers non-negotiable state law rights on employers or employees independent of any right established by contract, or instead, whether evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contracts. If the state tort law purports to define the meaning of the contract relationship, that law is preempted.

*Id.,* 471 U.S. at 213, 105 S.Ct. at 1912. Significantly, the Court stated that:

Not every dispute concerning employment, or tangentially involving a provision of a collective bargaining agreement, is pre-empted by § 310 or other provisions of the federal labor law. (emphasis added)

*Lueck,* 471 U.S. at 211, 105 S.Ct. at 1911. The Court specifically refused to pass judgment on whether an independent, state-im-

---

**2.** There is not full agreement among the circuits on this issue. The Fifth, Seventh, and Ninth Circuits agree that Section 301 provides jurisdiction over non-signatories only in limited circumstances. *Carpenters Local Union No. 1846 v. Pratt-Farnsworth, Inc.,* 690 F.2d 489 (5th Cir. 1982), *cert. denied,* 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983); *Carpenters Southern California Administrative Corporation v. Majestic*

*Housing,* 743 F.2d 1341 (9th Cir.1984); *Loss v. Blankenship,* 673 F.2d 942 (7th Cir.1982). Two circuits have permitted tortious interference with contract claims over non-signatories. *Local 472, United Association of Journeymen v. Georgia Power Co.,* 684 F.2d 721 (11th Cir.1982); *Wilkes-Barre Publishing Co. v. Newspaper Guild,* 647 F.2d 372 (3d Cir.1981), *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982).

posed duty that did not create similar problems of contract interpretation would be preempted.

The *Lueck* Court found preemption on the basis that the tort claim for bad-faith handling of an insurance claim could only be resolved by reference to the obligations that were created by the contract, and hence was preempted by federal law. The contract itself provided for a committee to resolve any insurance-related disputes. *Lueck* at 215, 105 S.Ct. at 1913. Under state law, the parties had the power to agree to what would constitute "reasonable performance of obligations under an insurance contract." Finally, the rights and duties involved in the tort of bad-faith failure to perform the contract derived from obligations established by the contract. Thus, even under state law, the tort claim was firmly rooted in the expectations of the parties who had signed the labor contract, and therefore had to be evaluated by federal labor law.

There were two major policy considerations in the *Lueck* decision. The first was that allowing contract terms to have different meanings under federal and state law "would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements." *Id.* at 210, 105 S.Ct. at 1910. The *Lueck* court, at pages 210–211, suggests the evils that would flow from the absence of uniform federal contract law include:

- Parties would be uncertain as to what they were binding themselves to when they signed a labor contract.
- Contract negotiations would be made immeasurably more difficult by the necessity of trying to formulate contract provisions that allowed for different law.
- Disputes over contract interpretation would proliferate.
- The same contract term would not have a uniform interpretation, raising the possibility that the same contract might be interpreted differently in different jurisdictions, thus hindering the Congressional policy of establishing a uniform body of federal labor law.

The second major policy underlying *Lueck* is that preemption of derivative tort claims "preserves the central role of arbitration" in labor law. *Id.*, 471 U.S. at 219, 105 S.Ct. at 1915. The Court said:

Perhaps the most harmful aspect of the Wisconsin decision [allowing the state claim] is that it would allow essentially the same suit to be brought directly in state court without first exhausting the grievance procedures established in the bargaining agreement.

*Id.* The Court continued:

A rule that permitted an individual to sidestep available grievance procedures would cause arbitration to lose most of its effectiveness, (cite omitted) as well as eviscerate a central tenet of federal labor-contract law under § 301 that it is the arbitrator, not the court, who has the responsibility to interpret the labor contract in the first instance.

*Id.* 471 U.S. at 220, 105 S.Ct. at 1916.

It may appear at first glance that the district court was correct in asserting preemption here. Seaboard is accused of a tortious interference with a labor contract between Dougherty and Parsec, and under Ohio law Seaboard is liable if, without a privilege to do so, it induced or otherwise improperly caused Parsec not to perform its contract with Dougherty. *Juhasz v. Quik Shops, Inc.*, 55 Ohio App.2d 51, 379 N.E.2d 235, (1977); *Heheman v. E.W. Scripps Co.*, 661 F.2d 1115, 1127 (6th Cir. 1981). The central element of Dougherty's claim against Seaboard is whether Parsec had just cause to fire Dougherty, and the district court reasoned that, since resolution of the claim was dependent upon an analysis of the just cause provision of the contract, *Lueck* mandated the conclusion that the tort claim was preempted. This decision was consistent with other cases holding that tortious interference with labor contract claims are preempted by § 301. *See Hillard v. Dobelman*, 774 F.2d 886 (8th Cir.1985); *Evangelista v. Inland-boatmen's Union*, 777 F.2d 1390 (9th Cir. 1985); *Peterson v. Airline Pilots Assoc.*, 759 F.2d 1161 (4th Cir.1985), *cert. denied,*

474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1986).

The significant distinction between all of the cases cited above and this case is that in all of those cases the claims were against entities who had signed the labor contract, or their agents. Those decisions, and the policy behind the Supreme Court's holding in *Lueck* are not applicable where the tortious interference claim is made against a nonsignatory to the labor contract.

It is true that tortious interference claims against nonsignatories have been held to be preempted by the National Labor Relations' Act, 29 U.S.C. § 157, 158, where the conduct for which the plaintiff alleges he was fired was protected by the NLRA. *See Satterfield v. Western Electric Company*, 758 F.2d 1252 (8th Cir.1985). There is no allegation here, however, that the plaintiff was engaged in activities protected by the NLRA. Section 301 preemption is based upon the relationship between the claim and the labor contract, while the inquiry in NLRA preemption is whether the plaintiff's conduct is protected by the statute, without reference to the contract.

It was pointed out by the Seventh Circuit in a pre-*Lueck* case, *Loss v. Blankenship*, 673 F.2d 942 (7th Cir.1982), that:

Requiring suits against non-parties for tortious interference with contract to be brought under state law, however, will not "exert a disruptive influence upon both negotiation and administration of collective agreements." (citing cases) Parties to the collective bargaining agreement will still be able to have their respective obligations to one another determined by federal law.

*Id.* at 948, n. 6. The validity of the Seventh Circuit's analysis is not affected by *Lueck*. Although a court must analyze the contract to determine whether a contract exists, and whether there has been a breach, in order to resolve whether the contract has been tortiously interfered with, this is not the type of case that requires preemption under *Lueck*. *Lueck* was concerned with the preemption of state laws that would modify the relationships created by labor contracts. Comment, 86 *Col.L.Rev.* 1051,

1063–64 (1986). As the Court pointed out in *Lueck*, 471 U.S. at page 213, 105 S.Ct. at page 1912 "If the state tort law purports to define the meaning of the contract relationship, that law is preempted." Allowing a state law action to proceed against a party who has not signed the labor contract, and whose obligations are not defined by the contract, will neither define nor modify the contractual relationship between the employer and the union.

One of the basic concerns of *Lueck* was that application of state law to labor contract terms would result in uncertainty in contract negotiations and increase the number of disputes over contract interpretation. None of these concerns is implicated here. Dougherty's allegation that Seaboard interfered with the labor contract will have no impact on either the Union's or Parsec's interpretation of the contract. Whether or not the contract was violated will still be decided in accordance with federal law, and state law will not be applied to the contract itself, but rather only to Seaboard's "extra-contractual" conduct. Accordingly, it will have no impact upon either the negotiation or administration of labor contracts, nor is there any reason to believe that holding a nonsignatory liable for tortious interference with the contract will increase disputes over contract interpretation.

The other major policy underlying *Lueck* was the concern that permitting state law claims would allow plaintiffs to avoid the fundamental labor policy that contract disputes should be decided by arbitrators in the first instance. That is not a problem where a tortious interference with contract claim is being made against a nonsignatory. The Sixth Circuit has held that a nonsignatory cannot be ordered to arbitrate a labor dispute absent a specific finding that the relationship between it and the party bound by the contract is such that it too is bound to arbitrate. *S.E.E.U.*, 755 F.2d at 504. No such findings have been made in this case.

The only cases holding that tortious interference claims against non-signatories are preempted by federal labor law have

allowed the claims to be brought under Section 301. *Wilkes-Barre Publishing Co. v. Newspaper Guild,* 647 F.2d 372 (3d Cir. 1981), *cert. denied,* 454 U.S. 1143, 102 S.Ct. 1003, 71 L.Ed.2d 295 (1982); *International Union, UMWA v. Eastover Mining Co.,* 623 F.Supp. 1141 (W.D.Va. 1985). Thus, even though the state claims were preempted, the plaintiff was given a Section 301 remedy against the non-signatory. However, this Circuit has held that Section 301 does not provide subject matter jurisdiction over nonsignatories in most instances. Thus, to affirm the district court in this case would be to leave the plaintiff without a remedy: unable to gain relief under Section 301, but prohibited from bringing an action under state law. It would not further the policies of either the Congress, in enacting the federal labor statutes, or the Supreme Court in *Lueck,* to give a third party who has allegedly interfered with a labor contract what effectively amounts to immunity.[3]

Allowing a union member to sue a non-signatory for tortious interference with a labor contract does not implicate any of the policies favoring the application of federal labor law found in *Lueck.* The application of state law to Dougherty's claim against Seaboard will not require the state law be used to interpret the collective bargaining agreement, nor will the resolution of this claim modify the contractual relationship between the union and employer. Dougherty's tortious interference with the contract claim against Seaboard is not preempted by Section 301 of the Labor-Management Relations Act.

Seaboard argues that, even if the tortious interference with contract claim is not preempted, it should be dismissed as there is no private cause of action to enforce Section 11(c) of the Occupational Safety and Health Act, 29 U.S.C. § 660(c), that prohibits retaliatory actions against individuals who file complaints with OSHA. It is true that this provision does not create a private right of action. *Taylor v. Brighton Corp.,* 616 F.2d 256 (6th Cir.1980).

What Seaboard disregards, however, is that retaliation for complaining to OSHA is not the sole basis for Dougherty's claim of tortious interference. His complaint alleges that:

Seaboard's action in requesting discharge [sic] was motivated by a desire to retaliate against Plaintiff for filing a complaint with OSHA and for exercising his right of free speech and his right to complain concerning Seaboard's unwarranted interference with Company-Union relationships.

Complaint, ¶ 11, Joint Appendix p. 5. Thus, retaliation for complaining to OSHA was only one of three allegations behind the tortious interference with contract claim. Even if the OSHA allegation is removed, the freedom of speech and unwarranted interference with employer-union relationship allegations remain. The district court did not rule on these issues, leaving no record for this panel to review.

### III

Therefore, it appears to me that the case should be reversed because the claim is not preempted. I therefore respectfully dissent.

### APPENDIX A

Civil No. C-1-85-1912

### UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF OHIO

### WESTERN DIVISION

Decided May 9, 1986

### MEMORANDUM AND ORDER

PORTER, Senior District Judge:

This case is before the Court on defendant Seaboard's motion to dismiss plaintiff's claim against it. The claim alleges Seaboard tortiously interfered with a labor contract between plaintiff and defendant Parsec. Because we believe that plaintiff's

---

**3.** This issue impacts a broad spectrum of workers. For instance, the construction industry, which is one of the country's largest in terms of employment, is characterized by decentralized work sites where the possibility of "third party interference" is significant. *See* Stiglitz, "Union Representation in Construction: Who Makes the Choice?" 18 *San Diego L.Rev.* 583 (1981).

claim is pre-empted under the rule of *Allis-Chalmers v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), we grant Seaboard's motion and dismiss the claim against it.

The pertinent facts are the following. Plaintiff was employed by defendant Parsec as a crew operator. Parsec and defendant Union (Teamsters Local 100) were parties to a collective bargaining agreement. Under the agreement, plaintiff could be terminated only for just cause. Parsec loaded and unloaded containers for Seaboard on Seaboard's premises, but plaintiff was never employed by Seaboard. Seaboard was not a party to the collective bargaining agreement between Parsec and the Union.

Plaintiff alleges that because of complaints he made to the Occupational Safety and Health Administration (OSHA) about hazardous conditions at Seaboard, Seaboard prevailed upon Parsec to terminate plaintiff. Plaintiff alleges that his termination violated the "just cause" provision of the collective bargaining agreement.

Plaintiff filed a grievance protesting the discharge, which was processed to a hearing before a Joint Committee of the Teamsters and members of the trucking industry. Plaintiff alleges the committee was unfairly biased against him.

Essentially, plaintiff's complaint states a claim for relief under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 1985 [sic], for breach of contract and also states a claim against the union for breach of its duty of fair representation. Plaintiff also states a claim against Seaboard for tortious interference with the contract.

Seaboard's instant motion seeks dismissal of the claim against it on two grounds. First, Seaboard contends that the state law claim is pre-empted by the provisions of the Occupational Safety and Health Act, Section 11(c), 29 U.S.C. § 660(c). Section 11(c) prohibits retaliatory actions against individuals who complain to OSHA. The Sixth Circuit has held that § 11(c) does not create a private right of action. *Taylor v. Brighton Corp.,* 616 F.2d 256 (6th Cir.1980).

We need not decide this first issue, because Seaboard's alternative ground for dismissal is well-taken. Seaboard contends that under the rule of *Allis-Chalmers v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), plaintiff's tortious interference claim must be dismissed as pre-empted by section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

Our starting point in determining whether plaintiff's claim against Seaboard is pre-empted is the *Allis-Chalmers* case. There, the Court held that the pre-emptive scope of Section 301 extends beyond contract violations. The Court determined that a tort claim is pre-empted by Section 301 if the claim is "inextricably intertwined with consideration of the terms of the labor contract." *Allis-Chalmers, supra* 105 S.Ct. at 1912. Conversely, the Court held that if the tort action "confers non-negotiable state law rights on employers or employees independent of any right established by contract," the claim is not pre-empted. In short, the Court held that "when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Id.* at 1916 (citation omitted).

The policies underlying pre-emption are several, but prominent among them is the Congressional goal of promoting uniformity in the interpretation of labor agreements. *Id.* at 1911. A secondary goal is the preservation of arbitration as an essential component of industrial self-government. *Id.* at 1915, *quoting Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 581, 80 S.Ct. 1347, 1352, 4 L.Ed.2d 1409 (1960).

Although the Supreme Court has appeared to resolve the substantial question of when a tort claim may be pre-empted by § 301, it left for a case by case analysis the delineation of the reach of the doctrine. The instant motion raises the unanswered question of how broadly the pre-emption doctrine should extend.

The exact issue presented here is whether a tortious interference claim against a third party is *so* intertwined with the terms of the collective bargaining agreement that it is pre-empted by Section 301, or whether such a claim seeks to enforce rights sufficiently independent of the labor contract to warrant its treatment as a separate state-law claim.

We are mindful that the opposing positions presented to us are, in the final analysis, very closely balanced. Our task in weighing the issues has been facilitated by the excellent memoranda we have received. Plaintiff contends that the policies protected in *Allis-Chalmers* would not be jeopardized by our recognition of a state-law claim for tortious interference with a contract. According to plaintiff, resolution of the claim need not involve state-law analysis of the substantive terms of the collective bargaining agreement since the tortious interference claim exists wholly separate from the contract, and is a creature of state law. Moreover, the claim gives rise only to state-law remedies.

Recognition of the claims, plaintiff thus argues, would not undermine the congressional policy of uniformity in the interpretation of labor contracts. Nor would it diminish the important goal of preserving the central role of arbitration in "our system of industrial self government." *Allis-Chalmers*, 105 S.Ct. at 1915.

Defendants counter that the tortious interference claim *does* require analysis of the substantive terms of the collective bargaining agreement. For authority, defendant refers the Court to *Cincinnati Bengals, Inc. v. Bergey*, 453 F.Supp. 129 (S.D. Ohio 1974), where we outlined the following essential elements to recovery for tortious interference with contract.

(1) the contract; (2) the wrongoer's [sic] knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification, and (5) damages thereof.[1]

*Id.* at 145, *quoting* 45 Am.Jur.2d Interference § 3. Moreover, defendant cites the Court to several cases that have held tortious interference claims are pre-empted by § 301. *See Hilliard v. Dobelman*, 774 F.2d 886 (8th Cir.1985); *Evangelista v. Inlandboatmen's Union*, 777 F.2d 1390 (9th Cir.1985); *Mitchell v. Pepsi Cola Bottlers, Inc.*, 772 F.2d 342 (7th Cir.1985); *Peterson v. Airline Pilots Association*, 759 F.2d 1161 (4th Cir.1985), *cert. denied*, 474 U.S. 946, 106 S.Ct. 312, 88 L.Ed.2d 289 (1985).

We agree with the plaintiff on two points. First, we agree that state-law analysis of the labor contract is not required to analyze the tortious interference claim. The breach of the "just cause" provision can be analyzed for the purpose of a tortious interference claim according to the precepts of § 301. Likewise, we agree that promotion of arbitration is not a goal that is implicated in this case. Not only has plaintiff processed the wrongful discharge claim to arbitration, but because Seaboard is not a party to a collective bargaining agreement with plaintiff, plaintiff's state-law claim could not be arbitrated under the labor contract anyway.

Neverthess [sic], we think the better view of pre-emption is the one put forward by the defendant. Our reading of *Allis-Chalmers* persuades us that the Supreme Court has not proceeded cautiously in the area of pre-emption, as plaintiff asserts, but has rather endorsed a sweeping approach in pre-emption questions. Indeed, the Sixth Circuit has taken a similar view of the reach of the pre-emption doctrine and has held pre-empted by § 301 a state-law claim pressed by a non-party to a labor agreement. In *Michigan Mutuel* [sic] *Insurance Co. v. United Steelworkers*, 774 F.2d 104 (6th Cir.1985), a worker's compen-

---

1. Plaintiff's version of the requisite elements in a tortious interference claim are
   (a) the nature of the actor's conduct,
   (b) the nature of the expectancy with which his conduct interferes,
   (c) the relations between the parties,
   (d) the interest sought to be advanced by the actor and
   (e) the social interests in protecting the expectancy on the one hand and the actor's freedom of action on the other hand.
   *Hehman* [sic] *v. E.W. Scripps Co.*, 661 F.2d 1115 (6th Cir.1981), *citing Juhasz v. Quik Shops, Inc.*, 55 Ohio App.2d 51, 379 N.E.2d 235, 238 (1977), *citing* Restatement of Torts § 766 (1939).

sation insurer brought suit against a union for breach of a duty arising under the collective bargaining agreement. The Court held that the "determination of the existence and scope of the duty which the defendant allegedly breached is 'substantially dependent' upon analysis of the terms of a collective bargaining agreement," *Id.* at 106, *quoting Allis-Chalmers*, 105 S.Ct. at 1516, and was therefore pre-empted.

We believe the same result is required here. Regardless of how the tortious interference with a contract claim is defined, the terms of the labor agreement will have to be scrutinized to determine if Seaboard induced its breach. We do not find it significant for our purposes that the contract may be interpreted exclusively by federal law. Common sense tells us that any claim for tortious interference *with a contract* is substantially dependent upon analysis of the contract itself. Our conclusion, while not compelled, is at least reinforced by the cases cited by defendant holding that tortious interference claims are pre-empted by § 301.

We are mindful of plaintiff's point that defendant's cases involve suits against either supervisors, *see, e.g., Hilliard, supra, Mitchell, supra,* or union leaders, *see, e.g., Evangelista, supra; Peterson, supra,* and therefore do not apply with full force in the instant case where the defendant is not a party to the collective bargaining agreement. Nonetheless, we find the cases to be persuasive of the point that plaintiff's state-law tortious interference claim is pre-empted by § 301, especially in view of the fact that any claim would require analysis of the collective bargaining agreement anyway.

Our holding is based on the conclusion that recognition of the plaintiff's state-law claim would jeopardize the dominant policy goal behind pre-emption, *i.e.*, the uniform federal interpretation of labor contracts. Since the state tort clearly implicates the collective bargaining agreement,[2] recognition of the tort would permit interpretation of the labor contract in a "different environment." *Allis-Chalmers*, 105 S.Ct. at 1915. It will not be in all cases that plaintiffs will, for strategic reasons, join both the federal and state-law claims, as is the case here. Plaintiffs may often find it expedient to bring the tortious interference suit in state court. Thus, the anomalous situation could arise that two cases involving the same collective bargaining agreement could proceed in simultaneous proceedings in state and federal courts. We believe this is the exact circumstance the Court in *Allis-Chalmers* sought to avoid.

Moreover, uniformity is also threatened by recognition of the state tort in terms of the changed legal consequences that would flow from the breach of a collective bargaining agreement. *See Allis-Chalmers, supra* at 1911. Plaintiff's remedy for breach of the labor contract would expand beyond those available under Section 301, *e.g.*, back pay and reinstatement, to include the potential for punitive damages and attorney fees. Such damages might not alter the respective rights of the *contracting parties*, but their availability clearly makes the consequences flowing from the breach of the contract partially dependent upon state law.

Plaintiff argues that this case falls outside the scope of the *Allis-Chalmers* rule in that it involves a right created independent of the collective bargaining agreement, but merely related to it in some way. *See Allis-Chalmers, supra* at 1516; *Michigan Mutual Insurance, supra* at 106. We disagree. The tort of interference with a contract is derived from the contract. An interference claim could not exist in the absence of a breach [sic] collective bargaining agreement. *See supra.* It is thus more than related to the agreement. It is dependent for its very existence on the contract itself.

---

**2.** See also *Satterfield v. Western Electric Co.*, 758 F.2d 1252 (8th Cir.1985) in which the court, on facts similar to the instant case, held pre-empted by Section 8(a)(1) of the National Labor Relations Act a tortious interference lawsuit brought by a former employee against a nonparty to the collective bargaining contract. There, the plaintiff had alleged that he was terminated at the direction of defendant for distributing right-to-work literature to other union members working on defendant's construction site.

We recognize that our holding insulates Seaboard from suit by the plaintiff. However, as defendant correctly points out, the Sixth Circuit has found pre-emption of a state cause of action appropriate even though it results in freeing a party from suit. *See Michigan Mutual Insurance, supra.*

Having determined that the rule of *Allis-Chalmers* governs the instant motion, we must determine whether to treat the tortious interference claim as a § 301 claim, or dismiss it as pre-empted by federal labor-contract law. *Allis-Chalmers, supra* 105 S.Ct. at 1916.

The Sixth Circuit Court of Appeals has held that under § 301 "a district court does not have subject matter jurisdiction over a non-signatory to a collective bargaining agreement, where no rights or duties of the non-signatory party are stated in the terms and conditions of the contract." *Service Employees Union v. Commercial Property,* 755 F.2d 499 (6th Cir.1985). Therefore, even if we treat plaintiff's claim as a § 301 claim it must be dismissed.

### ORDER

Accordingly, for all of the foregoing reasons, plaintiff's claim against Seaboard is hereby dismissed.

Also, pursuant to Federal Rules of Civil Procedure, Rule 54, we find that there is no just reason to delay the entrance of final judgment on the instant motion. We therefore direct the Clerk to enter final judgment of dismissal as to plaintiff's claim against Seaboard.

SO ORDERED.

/s/ David S. Porter
United States
Senior District Judge