**William DOUGHERTY,
Plaintiff–Appellant,**

v.

**PARSEC, INC.; Truck Drivers, Chauffeurs & Helpers, Local Union # 100; Budco Group, Inc., Seaboard System Railroad, Defendants–Appellees.**

No. 86–3482.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 6, 1988.

Decided April 18, 1989.

Rehearing and Rehearing En Banc
Denied July 5, 1989.

Paul H. Tobias (argued) David Torchia, Tobias & Kraus, Cincinnati, Ohio, for plaintiff-appellant.

Harold S. Freeman (argued), Dinsmore & Shohl, Jonas Katz, George E. Yund, Cincinnati, Ohio, for defendants-appellees.

Before ENGEL, Chief Judge, KRUPANSKY, Circuit Judge, and GILMORE, District Judge.*

GILMORE, District Judge.

This matter is before the court on remand from the United States Supreme

* The Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation.

Court, —— U.S. ——, 108 S.Ct. 2812, 100 L.Ed.2d 914. While a petition for writ of certiorari was pending, the Supreme Court decided *Lingle v. Norge Division of Magic Chef, Inc.,* —— U.S. ——, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). After rendering the *Lingle* decision, the Court vacated the judgment, and remanded the instant case "for further consideration in light of *Lingle....*" The Court expressed no opinion as to the effect that *Lingle* would have on this case. *Dougherty v. Parsec, Inc.,* —— U.S. ——, 108 S.Ct. 2812, 100 L.Ed.2d 914 (1988).

On December 26, 1985, Plaintiff-appellant William Dougherty filed the instant claim against Defendants-appellees Parsec, Inc. (Employer), Teamsters Local # 100 (Union) and a client of Parsec's, Seaboard System Railroad (Seaboard).[1] The complaint in pertinent part, alleged that Seaboard tortiously interfered with Dougherty's contractual relationship with his employer by requesting his discharge, and that Seaboard's actions were motivated by a desire to retaliate against Dougherty for filing a complaint with OSHA regarding conditions at Seaboard. Plaintiff asserted in the complaint that Parsec had complied with Seaboard's wishes and terminated him in violation of the provision in the collective bargaining agreement that discharges shall be only for just cause. Plaintiff filed a grievance under the collective bargaining agreement that resulted in arbitration, as provided by the contract. Following exhaustion of the contractual grievance and arbitration procedure, during which the Union represented Plaintiff, his discharge was upheld.

Seaboard filed a motion to dismiss on the grounds, *inter alia,* that Dougherty's tortious interference with contract claim was preempted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.[2] On May 9, 1986, the district court granted Seaboard's motion to dismiss. Re-

lying on *Allis–Chalmers v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), and *Michigan Mutual Insurance Co. v. United Steelworkers,* 774 F.2d 104 (6th Cir.1985), the court held Plaintiff's claim was preempted by Section 301.

On appeal, a divided court affirmed. *Dougherty v. Parsec, Inc.,* 824 F.2d 1477 (6th Cir.1987). The majority noted that a fair reading of *Lueck* was that a tort claim under state law is preempted by Section 301 if that claim is "inextricably intertwined with consideration of terms of the labor contract." 824 F.2d at 1478 (quoting *Lueck,* 471 U.S. at 213, 105 S.Ct. at 1912). The court quoted the district judge: "Regardless of how the tortious interference with a contract claim is defined, the terms of the labor agreement will have to be scrutinized to determine if Seaboard induced its breach." *Id.* at 1478. In affirming the trial court, the court stated:

> The only contract with which any interference could be charged is the collective bargaining agreement. An interference claim could not exist in the absence of such agreement, which in turn is exclusively to be interpreted under federal law.

*Id.* at 1478–79.

On remand, Plaintiff Dougherty argues that *Lingle* requires a finding that his claim against Defendant Seaboard is not preempted by Section 301. Defendant argues that *Lingle* should have no effect on the prior opinion.

The central issue on remand is whether *Lingle* affects Dougherty's claim against Seaboard—does *Lingle* require preemption or not? If the application of Ohio state law to Plaintiff's claim will require interpretation of the collective bargaining agreement, then the claim should be preempted. However, if the state law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agree-

---

1. For a complete statement of facts, see this court's previous opinion: *Dougherty v. Parsec, Inc.,* 824 F.2d 1477 (6th Cir.1987).

2. Section 301 specifically provides:

Suits for violation of contracts between an employer and a labor organization representing employees ... may be brought in any district court of the United States having jurisdiction of the parties....
29 U.S.C. § 185(a).

ment for Section 301 preemption purposes. *See Lingle,* —— U.S. at ——, 108 S.Ct. at 1883, 100 L.Ed.2d at 421.

In *Lingle,* the plaintiff was injured in the course of her employment, and filed a worker's compensation claim. The employer, in response, discharged the employee for filing a false claim. The union grieved the discharge, and, at the same time, the plaintiff filed suit claiming the discharge was in retaliation for having exercised her rights under Illinois' worker's compensation laws. *Id.* ——, 108 S.Ct. at 1879, 100 L.Ed.2d at 416. The case was removed to federal court, where the district court held that Section 301 preempted plaintiff's retaliatory discharge claim. *Id.*

Upon review of the case, the United States Supreme Court held that the claim was not preempted because none of the elements necessary to prove the case under state law required interpretation of any provision of the collective bargaining agreement. *Id.* at ——, 108 S.Ct. at 1881–82, 100 L.Ed.2d at 419. Specifically, the Court explained that under Illinois law, to establish a retaliatory discharge claim, a plaintiff must establish that: "(1) he was discharged or threatened with discharge and (2) the employer's motive in discharging or threatening to discharge him was to deter him from exercising his rights under the Act...." *Id.* (quoting *Horton v. Miller Chemical Co.,* 776 F.2d 1351, 1356 (7th Cir.1985), *cert. denied,* 475 U.S. 1122, 106 S.Ct. 1641, 90 L.Ed.2d 186 (1986)). The Court expressly recognized that neither of these elements required resort to or interpretation of any part of the applicable collective bargaining agreement. Likewise, as the Court pointed out, the employer's defense (i.e., to show a nonretaliatory motive), was purely a question of fact that created no need to review the bargaining agreement. Accordingly, since the elements of the state law cause of action were independent from and required no interpretation of the terms of the collective bargaining agreement, Section 301 did not preempt the claim. *Id.* —— U.S. at ——, 108 S.Ct. at 1881–82, 100 L.Ed.2d at 419–20.

The Court noted that the Seventh Circuit, in finding preemption by Section 301 of the state retaliatory discharge claim, "relied upon a different way in which a state law claim may be considered 'independent' of a collective bargaining agreement." *Id.* at ——, 108 S.Ct. at 1882, 100 L.Ed.2d at 420. The Seventh Circuit stated that, in deciding the state law claim, a "state court would be deciding precisely the same issue as would be an arbitrator: whether there was 'just cause' to discharge the worker." 823 F.2d at 1046. The Seventh Circuit concluded that "the state tort of retaliatory discharge is inextricably intertwined with the collective bargaining agreement here, because it implicated the same analysis of the facts as would an inquiry under the just cause provisions of the agreement." *Id.*

Regarding this reasoning, the Supreme Court commented:

> We agree with the Court's explanation that the state-law analysis might well involve attention to the same factual considerations as the contractual determination of whether Lingle was fired for just cause. But we disagree with the Court's conclusion that such parallelism renders the state-law analysis dependent upon the contractual analysis. For while there may be instances in which the National Labor Relations Act pre-empts state law on the basis of the subject matter of the law in question, § 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of such agreements. In other words, even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.

—— U.S. at ——, 108 S.Ct. at 1883, 100 L.Ed.2d at 420–21 (footnotes omitted).

Significantly, the Court stated in footnote 12 of its opinion:

A collective-bargaining agreement may, of course, contain information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state law suit is entitled.... Although federal law would govern the interpretation of the agreement to determine the proper damages, the underlying state law claim, not otherwise pre-empted, would stand. Thus, as a general proposition, a state law claim may depend for its resolution upon both the interpretation of a collective-bargaining agreement and a separate state law analysis that does not turn on the agreement. In such a case, federal law would govern the interpretation of the agreement, but the separate state law analysis would not be thereby pre-empted. As we said in *Allis–Chalmers Corp. v. Lueck*, 471 U.S. at 211, 105 S.Ct. at 1911, "not every dispute ... tangentially involving a provision of a collective-bargaining agreement is pre-empted by § 301...."

*Id.* —— U.S. at —— n. 12, 108 S.Ct. at 1885 n. 12, 100 L.Ed.2d at 423 n. 12 (citations omitted).

Here, Plaintiff asserts that his claim, like Lingle's, can be resolved without interpreting the labor agreement and is therefore independent of the agreement and not subject to preemption under Section 301. Similar to Lingle's state law claim, Plaintiff asserts that resolution of his claim against Seaboard focuses "not on the labor agreement, but upon retaliation and the conduct and motives of the party infringing upon the state law rights." For Plaintiff to succeed, Plaintiff asserts he need only show that "Seaboard, without justification and with a retaliatory motive interfered with his employment and demanded his termination from Parsec." *See Juhasz v. Quik Shops, Inc.*, 55 Ohio App.2d 51, 379 N.E.2d 235 (1977); *Heheman v. E.W. Scripps, Co.*, 661 F.2d 1115, 1127 (6th Cir.1981), *cert. denied*, 456 U.S. 991, 102 S.Ct. 2272, 73 L.Ed.2d 1286 (1982).

Seaboard argues that a review of the elements of the state cause of action for tortious interference with contract requires interpretation of the labor agreement. Some Ohio courts have required the following elements to state a cause of action: (1) the contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom. *Cincinnati Bengals, Inc. v. Bergey*, 453 F.Supp. 129, 145 (S.D.Ohio 1974). The Sixth Circuit in *Heheman, supra*, stated that the principle of an Ohio action for the tort of interference with contractual relations is:

[O]ne who, without a privilege to do so, induces or otherwise purposely causes a third party not to enter into, or continue, a business relationship with another, or perform a contract with another is liable to the other for the harm caused thereby.

661 F.2d at 1127 (citing *Juhasz*, 379 N.E.2d 235, 238 (1977)).

Defendant asserts that the district court, in ruling on Plaintiff's claim, would be required under the third element of the tort to analyze and interpret the terms of the collective bargaining agreement to determine whether Seaboard had intentionally procured a breach of that agreement. Thus, Seaboard argues, the state claim is not independent of the collective bargaining agreement for Section 301 purposes, but to the contrary it is dependent upon that contract. Defendant asserts that the meaning of the agreement must be ascertained to determine whether such a breach was induced by Seaboard.

Defendant claims that any finding of liability here would necessarily depend upon rights created by the collective bargaining agreement. This is because the first element of Plaintiff's claim is the existence of a contract, and the only contract Plaintiff could possibly rely upon here is the labor contract. Moreover, the district court would be required to ascertain what contractual duties the parties undertook, and whether Seaboard induced a breach of those duties.

The key issue on remand is whether, using the language of *Lingle*, "even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other hand, would require addressing precisely the same set of facts," can the "state-law claim be resolved without interpreting the agreement itself?" If so, the claim is " 'independent' of the agreement for 301 preemption purposes." — U.S. at ——, 108 S.Ct. at 1883, 100 L.Ed.2d at 421.

The Ohio law on the tort of tortious interference with contract is not clear. Some courts have suggested an analysis under the elements listed in *Cincinnati Bengals. See, e.g., Billingsley Box Co. v. Miami Systems Corp.*, No. C–870066, 1988 WL 6531 (Hamilton Co. App. Jan 27, 1988); *Sekerak v. Friedman*, No. 51997, 1987 WL 10600 (Cuyahoga Co. App. April 30, 1987); *Larissey v. Financial Investment, Inc.*, 1986 WL 13585 (Cuyahoga Co. App. Nov. 26, 1986). Other courts have utilized the general language of *Heheman:*

> [O]ne who, without a privilege to do so, induces or otherwise purposely causes a third party not to enter into, or continue, a business relationship with another, or perform a contract with another is liable to the other for the harm caused thereby.

*Heheman*, 661 F.2d at 1127 (quoting *Juhasz*, 379 N.E.2d at 238).

The Sixth Circuit has recently considered the Ohio tort of tortious interference with contract in *Canderm Pharmacal v. Elder*, 862 F.2d 597 (6th Cir.1988). The court in *Canderm Pharmacal* quoted the above language from *Heheman* and *Juhasz*, but did not mention the elements suggested by *Cincinnati Bengals*. Therefore, this Court will consider the state law claim as defined in *Heheman* and *Juhasz*.[3] This suggests that an underlying determination of the merits of the state claim will not have to consider whether there was an actual breach of contract—only whether there was an interference by Seaboard that in some way affected the business relationship of Dougherty and his employer, Parsec.[4]

Here, the tortious interference with contract/business relationship claim can be resolved without interpreting the collective bargaining agreement. Any analysis of the collective bargaining agreement has already been done. Plaintiff was discharged, and the arbitrator upheld the discharge. If the case goes to trial, Seaboard will deny any wrongdoing and will provide Parsec witnesses to state the reasons why Plaintiff was discharged. No further analysis of the collective bargaining agreement will be necessary. Then, Plaintiff must show that Seaboard in some way interfered with Plaintiff's business relationship with Parsec, thus making pretextual the other reasons for Plaintiff's discharge.

One of the basic concerns of the Supreme Court in *Allis–Chalmers v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985), was that application of state law to

---

**3.** Other jurisdictions have held that a breach of contract is not an essential element for a claim of tortious interference. *See, e.g., American Fletcher Mortgage Co., Inc. v. U.S. Steel Credit Corp.*, 635 F.2d 1247 (7th Cir.1980), *cert. denied*, 451 U.S. 911, 101 S.Ct. 1982, 68 L.Ed.2d 300 (1981); *Goodall v. Columbia Ventures, Inc.*, 374 F.Supp. 1324, 1332 (S.D.N.Y.1974); *Continental Research, Inc. v. Cruttenden, Podesta & Miller*, 222 F.Supp. 190 (D.Minn.1963).

**4.** However, even if this court decided that the elements in *Cincinnati Bengals* would have to be considered, *Lingle* suggests that this claim could be decided without interpreting the agreement. In *Lingle*, a state law claim for retaliatory discharge against the employer was involved. The arbitrator in the case found in plaintiff's favor— that plaintiff was not fired for just cause; reinstatement was ordered. The Supreme Court found that plaintiff's separate claim for retaliatory discharge was not preempted because, even though it involved factual issues similar to those considered by the arbitrator in deciding whether plaintiff was fired for just cause, it could be resolved without interpreting the agreement itself. Under Illinois law, one of the elements of a retaliatory discharge claim is that plaintiff must show that he/she was "discharged or threatened with discharge." Looking into this element is similar to looking into the third element of *Cincinnati Bengals* in that it would possibly consider some of the same factual issues as were involved in the arbitrator's just cause analysis as required under the collective bargaining agreement. Nevertheless, the Supreme Court stated that the retaliatory discharge claim could be resolved without interpreting the agreement.

labor contract terms would result in uncertainty in contract negotiations and increase the number of disputes over contract interpretation. Here, allowing a state law action to proceed against a party who has not signed the labor contract, and whose obligations are not defined by the contract, will neither define nor modify the contractual relationship between the employer and the union. *See Dougherty*, 824 F.2d at 1482 (dissenting opinion).

Another major policy underlying *Lueck* was the concern that permitting state law claims would allow plaintiffs to avoid the fundamental labor policy that contract disputes should be decided by arbitrators in the first instance. "That is not a problem where a tortious interference with contract claim is being made against a nonsignatory" because the nonsignatory is not bound by the contract (hence not bound to arbitrate). *Id.*

Moreover, "it would not further the policies of either the Congress in enacting the federal labor statutes, or the Supreme Court in *Lueck*, to give a third party who has allegedly interfered with a labor contract what effectively amounts to immunity." *Id.* at 1483. "Immunity" would be the result if the court found the claim preempted by Section 301, and also found that Plaintiff could not bring a claim of this type under Section 301. Finding that the claim is not preempted would allow the Plaintiff to bring the state law claim in federal court based upon diversity.

Finally, *Lingle* requires this court to find that Dougherty's state law claim is not preempted by Section 301. *Lingle*'s language is clear:

> [E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.

— U.S. at ——, 108 S.Ct. at 1883, 100 L.Ed.2d at 421.

The Court further noted:

> [A]s a general proposition, a state law claim may depend for its resolution upon both the interpretation of a collective-bargaining agreement and a separate state law analysis that does not turn on the agreement. In such a case, federal law would govern the interpretation of the agreement, but the separate state law analysis would not be thereby preempted.... [N]ot every dispute ... tangentially involving a provision of a collective-bargaining agreement is pre-empted by § 301....

— U.S. at ——, 108 S.Ct. at 1885 n. 12, 100 L.Ed.2d at 423–24 n. 12. *See also Merchant v. American Steamship Company*, 860 F.2d 204 (6th Cir.1988) (retaliatory discharge claim under federal Maritime law not preempted by § 301).

If a court were to find preemption of a state law claim, the argument for preemption would be better with a state retaliatory discharge claim between employer and the employee, parties to the collective bargaining, than it would be for a state tortious interference with business relationship claim involving a party not involved in the collective bargaining agreement. The retaliatory discharge claim more directly focuses on the "just cause" issue than does the tortious interference with business relationship. Nevertheless, the Supreme Court in *Lingle* found the retaliatory discharge claim not preempted. It follows that Dougherty's state law claim for tortious interference with business relationship should not be preempted.

Therefore, this court holds, on remand and in light of *Lingle*, that Dougherty's claim against Seaboard for tortious interference with contract is not preempted. The case is remanded to the district court for resolution of this state law claim.

For the foregoing reasons, the judgment of the district court is REVERSED, and the case REMANDED for further proceedings.