OPINION
In this accelerated calendar case, submitted on the record and the briefs of the parties, appellant, Claire Parker ("Parker"), appeals from the November 5, 1999 judgment of the Geauga County Court of Common Pleas granting summary judgment in favor of appellee Priorway Farms Homeowners Association ("Priorway"). Parker had filed suit against Priorway for tortious interference with a contractual relationship. The following facts are relevant to a determination of this appeal.
Priorway Farms is a privately owned housing subdivision located in Newbury, Ohio. There are eleven lots within the subdivision. Priorway is a non-profit corporation formed in 1976 which maintains the common property and promulgates rules governing the use of homes within the subdivision. Parker moved into the subdivision in 1987. Access to the lots is gained through Priorway Drive, a private road owned and controlled by Priorway. Priorway also owns approximately fifty acres that has a horse barn, a pasture, a lake, a stream, and a separate driveway.
In 1998, Parker moved out of state and sold her home. In conjunction with this move, Parker decided to sell some personal property rather than move it with her. In July 1998, Parker entered a contract with Suzanne Gloden of Chesleybrook/Stonehouse, Ltd. Estate Liquidators to conduct a sale of the personal property which would be open to the public. Gloden estimated the total value of all of the items at $17,365. She indicated that she never realizes the full value (sells everything), but that she anticipated sales in excess of $10,000. The sale was to be conducted from August 21 through August 23, 1998.
Parker claims that before moving into Priorway Farms in 1987, she requested that Priorway disclose all the rules governing use of the homes in the subdivision. She claims the only document she was provided was the "Regulations of Priorway Homeowners' Association." At issue in this case is a rule which prohibits the conduct of auctions or garage sales open to the public within Priorway Farms. This rule was not a part of the set of regulations provided to Parker when she moved into the subdivision. Article VII of Priorway's regulations empowered the board of trustees to adopt and publish rules governing the common areas. The ban on public garage sales and auctions rule was adopted at the annual meeting of the trustees and members in 1984. The adoption of the rule was documented in the annual meeting minutes, copies of which were subsequently distributed to all the current members.
Apparently, the various rules that were adopted by Priorway since its inception in 1976 were not systematically organized into a formal published set of rules, but rather were documented only within the meeting minutes as they were adopted in the context of each meeting. Thus, in order to ascertain all the rules, a member would have to peruse all the meeting minutes going back to 1976. Article XVI of the regulations does provide each member the right to inspect all the books, records and papers of Priorway.
Shortly after Parker entered her contract with Suzanne Gloden for the public sale, Mark Teague, the current president of Priorway, learned of the sale. Teague was not aware of the rule which prohibited such sales, but was soon approached by members who were aware of it. Upon learning of the rule, rather than informing Parker, Teague determined to poll Priorway's members to see if they remained in favor of the ban, and requested to see a copy of the rule. After determining the members remained in favor of the prohibition, and having received a copy of the regulation, Teague contacted Parker on August 13, 1998, and informed her of the prohibition. Parker responded that she had never seen the regulation, that she had requested copies of all the rules and regulations at the time she moved in, that her moving vans had all just left, that she had a contract with Suzanne Gloden, and that, since she was leaving town the next day, the sale had to go forward as planned. Parker claimed it was her understanding after the conversation with Teague that he was not going to interfere with the sale.
On August 17, 1998, Teague called Suzanne Gloden. Gloden testified in her deposition that Teague was very angry about the sale, that he informed her that Priorway absolutely forbids such sales, and that she was not to go forward with the sale. Gloden contacted Parker and informed her of the situation. Under the circumstances, Gloden was not willing to go forward with the sale as planned, and cancelled the public sale. Parker then had two other options, to make a bulk sale to a closeout dealer, or to conduct a private sale. Parker opted to go forward with a private sale. Gloden then contacted individuals on her customer list and made appointments with those interested in items to view them at Parker's house. Gloden conducted the private sale and made gross sales in the amount of $6,634.
On November 20, 1998, Parker filed her complaint for tortious interference with a contractual relationship. On September 10, 1999, Priorway filed its motion for summary judgment on the grounds that Parker could not establish the essential elements of the claim. The trial court granted this motion on November 5, 1999. The court concluded that Priorway's rules and regulations which gave rise to Teague's action of calling Suzanne Gloden was a valid effort to manage Priorway's property. The court found that Priorway's regulation banning the conduct of public auctions or sales on homes within Priorway Farms was mutually obligatory on all members, including Parker. Therefore, the court concluded, Priorway successfully demonstrated that Parker could not meet the element "lack of justification" (for inducing the contract's breach). The court also concluded that Parker's claim failed on the element of damages. The court did not specify its reasoning with respect to this element. Priorway had argued that Parker's claim was for lost profits, the existence and amount of which must be established with "reasonable certainty," and that Parker had failed to establish either the existence or amount of such profits. From this judgment Parker timely filed notice of appeal, assigning the following error:
 "The trial court erred by granting Priorway Farms Homeowners' Association motion for summary judgment."
In order to recover for a claim of intentional interference with a contract, one must prove (1) the existence of a contract, (2) the wrongdoers knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages. Kenty v. Transamerica Premium Ins. Co. (1995),72 Ohio St.3d 415, paragraph two of syllabus. The trial court concluded as a matter of law that Parker was unable to meet the fourth and fifth elements of this tort. In a cross-assignment of error, although not labeled as such, Priorway contends that Parker also cannot meet the third element, that Priorway intentionally procured the contract's breach.
A court of appeals' review of the grant of a motion for summary judgment is de novo. Burkholder v Straughn (June 26, 1998), Trumbull App. No. 97-T-0146, unreported at 5. Civ.R. 56(C) provides the rule governing motions for summary judgment. In construing Civ.R. 56(C), the Supreme Court of Ohio has stated that the moving party bears the burden of establishing that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds, construing the evidence in favor of the nonmoving party, can come to but one conclusion and that conclusion is adverse to the party opposing the motion. Harless v. Willis DayWarehousing Co. (1978), 54 Ohio St.2d 64, 66; Morris v. Ohio Cas. Ins.Co. (1988), 35 Ohio St.3d 45, 46-47.
The Supreme Court of Ohio in Dresher v. Burt (1996), 75 Ohio St.3d 280, set forth the burden that is placed on each party when a motion for summary judgment is filed. The court held:
 "* * * [A] party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Id. at 293. (Emphasis sic.)
Regarding the fourth element, whether Priorway lacked justification for interfering with the contract, Parker argues that, at the least, there were genuine issues of material fact with respect to justification sufficient to survive a motion for summary judgment. Specifically, Parker contends there is an issue of fact as to whether there was a rule, and if so, whether it was enforceable. In support of this argument, Parker argues Article VII of Priorway's regulations requires that newly adopted rules be "published," and claims this rule was never published.
The rule was adopted at Priorway's annual meeting in 1984, and published within the minutes from that meeting, copies of which were distributed to the current members. Parker was not a member at that time. The rule was not incorporated into the Regulations of Priorway Homeowners Association, nor any other formal set of rules and regulations for later distribution. Parker claims she requested copies of all the rules when she moved in, and was provided with a copy of the Regulations of Priorway Homeowners Association, but not copies of any other rules or any meeting minutes. Therefore, she argues, the rule was not published. She claims she was not aware of the rule until Mark Teague, Priorway's president, informed her of it in August of 1998. It is noteworthy that Teague, who moved into the subdivision in 1996, also was not aware of this rule until after Parker's sale was advertised, and only became aware of it because other members told him it existed, not because he had ever read it in Priorway documents.
In essence, Parker argues she cannot be bound by a "rule" that was not published, and which, consequently, she did not agree to at the time she entered Priorway. In other words, if this term was not part of the contract between the parties, then there could be no justification for interfering with her contract with Suzanne Gloden. Priorway argues that whether Parker received a copy of the rule is irrelevant, as the rule was properly adopted at Priorway's annual meeting in 1984, and published and provided to the members at the time. Furthermore, citing Juhasz v. QuickShops, Inc. (1977), 55 Ohio App.2d 51, 57, Priorway argues it was privileged to interfere with the contract because it was acting in good faith to protect a legally protected interest which it believed would be impaired or destroyed by performance of the contract.
In either analysis, the question is whether Priorway had a legally protected interest that would justify interference with the contract. In a summary judgment exercise, the issue is whether there are any questions of fact with respect to that question. If Priorway had a legally protected interest, it was established by contract, as the trial court acknowledged in finding that Priorway's regulations were mutually obligatory on all its members. In Episcopal Retirement Homes, Inc. v.Ohio Dept. of Indus. Relations (1991), 61 Ohio St.3d 366, the Supreme Court of Ohio stated:
 "The Restatement of the Law 2d, Contracts (1981) 5, Section 1, defines a `contract' as `[a] promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty.' In order to declare the existence of a contract, both parties to the contract must consent to its terms (see Columbus, Hocking Valley Toledo Ry. Co. v. Gaffney [1901], 65 Ohio St. 104, 61 N.E. 152); there must be a meeting of the minds of both parties (see Gaffney, supra); and the contract must be definite and certain (see James Ward Co. v. Wick Bros. Co. [1867], 17 Ohio St. 159)." Id. at 369.
There are questions of fact as to whether the parties consented to the terms of the contract as the contract is claimed to exist by Priorway. Parker claims she was not aware of the term, and not being aware of it, did not consent. Parker's claim that the rule was never published raises questions of fact. There are questions of fact as to whether there was a meeting of the minds, and also whether the terms were definite and certain. Priorway claims regardless of Parker's understanding, they had a legally protected interest. But, if that interest exists, it is founded in the contract. Thus, Priorway's argument ultimately devolves to the questions of fact with respect to the terms of the contract between the parties. Consequently, the resolution of the fourth element of the tort was inappropriate in a summary judgment exercise.
With respect to the fifth element, damages, in its motion for summary judgment Priorway makes a conclusory assertion that Parker cannot produce any evidence to demonstrate with "reasonable certainty" both the existence and amounts of lost profits. Therefore, it asserts, reasonable minds could not conclude with reasonable certainty there were any lost profits or ascertain the amount. Parker produced the testimony of Suzanne Gloden and also had available documents Ms. Gloden produced. Gloden operates a business of estate liquidation and clearly had experience in the field. She produced an item by item price list which established a "sell out" figure of $17,365. She testified that one of her sales typically draws three hundred to four hundred people over a three-day period, but, taking into account the rural location of this particular sale, that she expected over two hundred people. She anticipated sales in excess of $10,000, based upon her experience. In fact, only twenty eight people attended the private sale, and the total sales were for $6,634. We conclude reasonable minds could conclude there were lost profits, and, while it is impossible to prove what would have happened had the sale gone forward, that with proper testimony, a sales figure could be established with "reasonable certainty." Therefore, we conclude it was inappropriate to grant Priorway's motion for summary judgment on the grounds Parker could not establish the fifth element of the tort.
Finally, Priorway argues on appeal that Parker also failed to establish the third element of the tort, that Priorway intended to cause the non-performance of the contract. In its motion for summary judgment, while Priorway indicated its belief that Parker's claim failed on the third element, there were clearly questions of fact related to this element which could not be resolved by a summary judgment proceeding. Priorway claims it did not tell Suzanne Gloden she had to cancel the sale, but merely indicated to her they were not in favor of it and placed restrictions on her which caused her to choose to cancel the sale. Thus, it claims, it did not intend to cause the breach. Suzanne Gloden, on the other hand, testified unequivocally that Mark Teague told her the sale was forbidden and not to go forward under any circumstances. The conflict in testimony creates a question of fact which precludes a resolution of this issue in a motion for summary judgment.
Based on the foregoing analysis, we find Parker's assignment of error has merit and, thus, reverse this case and remand it to the trial court for further proceedings.
 __________________________________ JUDGE WILLIAM M. O'NEILL
CHRISTLEY, P.J., dissents with Dissenting Opinion, NADER, J., concurs.