DECISION AND JUDGMENT
{¶ 1} Plaintiff-appellant, MedCorp, Inc., appeals the March 10, 2008 judgment of the Lucas County Court of Common Pleas which granted partial summary judgment to defendants-appellees, Mercy Health Partners, St. Vincent Mercy Medical Center, St. Charles Mercy Hospital, St. Anne Mercy Hospital, and LifeStar Ambulance, Inc. *Page 2 
(referred to collectively as "MHP.") Because we find that no genuine issues of fact remain, we affirm the trial court's judgment.
 {¶ 2} Appellant, MedCorp, an Ohio corporation with its corporate offices in Toledo, is a "mobile medical services operation" which provides ambulance service, wheelchair transportation, and mobile x-ray and diagnostic services in Ohio and parts of Michigan, Kentucky, West Virginia, and Indiana. Mercy Health Partners is a health care system operating in Northwest Ohio and Southeast Michigan and includes the appellee hospitals. LifeStar Ambulance is owned by Mercy Health Partners and is a competitor of MedCorp.
 {¶ 3} On June 23, 2006, appellant commenced the instant action alleging various claims against MHP stemming from its alleged interference with "exclusive provider contracts" between MedCorp and various elder care facilities for the non-emergency transport of its patients. MedCorp stated that patients who agree to use MedCorp for their transport execute an Advance Directive for Transportation ("ADT") form, [1] either personally or, if incompetent, through their legal representative. The ADT form is then *Page 3 
printed on each "run sheet," or paper with the patient's name, physician, medical history, etc., and is either transported with the patient and personally delivered to the hospital or faxed to the appropriate department or emergency room.
 {¶ 4} In its complaint, MedCorp alleged that it was aware of multiple violations of patients' ADT forms by the appellee hospitals. Specifically, MedCorp alleged that although the ADT listed MedCorp as the patients' preferred transport provider, the hospitals would ignore the directive and the patients would be returned to the elder care facility (or another location) by way of MHP's LifeStar Ambulance or another transport provider.
 {¶ 5} Appellant alleged that due to a history of violations, in 2005, the parties entered into a "mediation agreement" which set forth the procedures to be followed when a patient with an ADT, and who was transported by MedCorp to appellee hospital, chooses another transportation service upon discharge. Such procedures included the requirement that the patient or the patient's representative sign a document indicating the alternative choice of transport and that the form be faxed to MedCorp. The agreement also contained procedures for resolution of alleged transportation violations and a methodology for redress. MedCorp contended that MHP refused to comply with the terms of the agreement which provided, in part, for the dispute to be heard before a neutral party.
 {¶ 6} MedCorp's complaint contained five counts: (1) breach of the mediation agreement; (2) interference with business relations (as to LifeStar); (3) interference with *Page 4 
business relations (as to Mercy Health Partners and the hospitals); (4) interference with contractual relations (as to LifeStar); and (5) interference with contractual relations (as to Mercy Health Partners and the hospitals.) On August 17, 2006, MHP filed its answer.
 {¶ 7} On December 14, 2007, MHP filed a motion for partial summary judgment as to Counts II through V of MedCorp's complaint. In support, MHP relied on the affidavits of MHP employees Lisa Jacobs, Celine Collins, Debra Delvaux, and Barbara Pasztor, and the deposition of MedCorp's executive vice-president, Tony Anteau. In its motion, MHP argued that the ADTs are not legally enforceable contracts between MedCorp and the elder care facilities' patients and, thus, because the agreements are terminable at will they could not form the basis of a claim for tortious interference with contractual relations. MHP further argued that there was no evidence of its "improper interference" with the patient's choice for return transportation. Further, as to LifeStar, MHP argued that the "fair competition" privilege of the Restatement (Second) of Torts applied to prevent liability.
 {¶ 8} MedCorp's memorandum in opposition to MHP's motion for partial summary judgment was supported by the affidavits of Tony Anteau, Ron Craig (MedCorp director of ambulette services), Paula Craig (MedCorp discharge reviewer), and Kevin Hoffman (MedCorp assistant director of communications) and the deposition of Celine Collins (director of medical management at St. Vincent's Mercy Medical Center.) MedCorp asserted that the patients were, in fact, parties to the agreement because the elder care facilities acted on their behalf in securing a discounted, negotiated *Page 5 
fee schedule with MedCorp. MedCorp further argued that the at-will status of the relationship between it and its patients does not preclude an action for tortious interference with contractual or business relations. Finally, MedCorp argued that LifeStar's actions were not privileged as they were wrongful and malicious.
 {¶ 9} On March 10, 2008, the trial court granted MHP's motion for partial summary judgment. The court found that even assuming that the agreements could be considered contracts, the fact that the patient could choose another provider at any time, for any reason, made them illusory and unenforceable. Again, assuming that a contract existed between MedCorp and the ADT patients, the court found that, even accepting the proper Civ. R. 56(C) evidence, MedCorp failed to demonstrate a genuine issue of fact relating to MHP's alleged improper interference with contractual or business relations. Subsequently, the trial court amended its judgment entry to allow an immediate appeal of its decision.
 {¶ 10} On appeal, MedCorp raises the following two assignments of error for our review:
 {¶ 11} "I. The trial court erred in holding that the relationship between the plaintiff/appellant and its customers is illusory and therefore an action for tortious interference cannot be maintained.
 {¶ 12} "II. The trial court erred in finding that there was no question of fact as to whether the actions of the defendants/appellees were privileged and therefore defendants/appellees were entitled to summary judgment." *Page 6 
 {¶ 13} We first note that appellate review of a trial court's grant of summary judgment is de novo. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105, 1996-Ohio-336. Accordingly, we review the trial court's grant of summary judgment independently and without deference to the trial court's determination. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. Summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66; Civ. R. 56(C). The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment. Dresher v. Burt, 75 Ohio St.3d 280, 294, 1996-Ohio-107. However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ. R. 56(E).
 {¶ 14} In MedCorp's first assignment of error, it contends that the trial court erroneously concluded that the relationship between MedCorp and its patients is illusory and, as such, cannot form the basis of a claim for tortious interference with a contractual or a business relationship.
 {¶ 15} In Kenty v. Transamerica Premium Ins. Co., 72 Ohio St.3d 415,1995-Ohio-61, the Supreme Court of Ohio first recognized the cause of action of tortious *Page 7 
interference with contract. The Kenty court set forth the following elements a plaintiff must demonstrate:
 {¶ 16} "In order to recover for a claim of intentional interference with a contract, one must prove (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages." Id. at paragraph two of the syllabus.
 {¶ 17} Similarly, a plaintiff may recover for intentional interference with business relations where "one who, without a privilege to do so, induces or otherwise purposely causes a third party not to enter into, or continue, a business relationship with another, or perform a contract with another is liable to the other for the harm caused thereby."Juhasz v. Quik Shops, Inc. (1977), 55 Ohio App.2d 51, 57. As this court noted in Bauer v. Commercial Aluminum Cookware Co. (2000),140 Ohio App.3d 193, 199, in Ohio "such interference must be intentional because Ohio does not recognize negligent interference with a business relationship." See Smith v. Ameriflora 1992, Inc. (1994),96 Ohio App.3d 179, 186; Burnside v. Leimbach (1991), 71 Ohio App.3d 399, 404.
 {¶ 18} As set forth above, the trial court determined that because the alleged contracts between MedCorp and the elder care patients were illusory, they were unenforceable. A contract is illusory where "by its terms the promisor retains an unlimited right to determine the nature or extent of his performance; the unlimited right, in effect, destroys his promise and thus makes it merely illusory." Imbrogno v. *Page 8 Mimrx.com, Inc., 10th Dist. No. 03AP-345, 2003-Ohio-6108, ¶ 8, citingCentury 21 v. McIntyre (1980), 68 Ohio App.2d 126.
 {¶ 19} First, we find that the alleged agreements between MedCorp and the elder care patients were not legally enforceable. The deposition of MedCorp vice-president, Tony Anteau, underscores the fact that the patients neither participated in any negotiations between the elder care facilities and MedCorp nor were they signatories to an exclusive provider agreement. The relevant testimony provides:
 {¶ 20} "Q. What documents do you understand constitute the contract, if there are any, between MedCorp and the patient?
 {¶ 21} "A. It would be the documents referred to in Exhibit B and then our advanced directives for transportation.
 {¶ 22} "Q. Now, when we say "Exhibit B," you're referring to the 42 separate sections that are right in front of you, correct?
 {¶ 23} "A. Right. Defendant's Exhibit B, correct.
 {¶ 24} "Q. And those reference the contractual relationships between MedCorp and the nursing home?
 {¶ 25} "A. The nursing facilities and patients, correct.
 {¶ 26} "Q. Well, do any of those 42 documents have a patient signing them?
 {¶ 27} "A. They do not. *Page 9 
 {¶ 28} "Q. Do any of those 42 have patients participating in the negotiations before those documents were signed? * * *. To the best of your knowledge, did any patient ever participate in advance of the execution of those documents?
 {¶ 29} "A. I'm not sure of that.
 {¶ 30} "Q. All right. Do you know of any?
 {¶ 31} "A. I don't know of any.
 {¶ 32} "Q. Other than the two categories you have just identified, Exhibit B and its various agreements, and what you refer to as an advanced directive for transportation, was that all the documents which evidence the contract between MedCorp and the patient?
 {¶ 33} "A. There's also the face sheets from the facilities, which would indicate the expressed wishes of the patient. * * *. The face sheet is prepared after they make their selection. They pick and choose. It's created after they express their wishes.
 {¶ 34} "Q. So it's not actually part of the agreement. It's only evidence that a selection has been made?
 {¶ 35} "A. Correct."
 {¶ 36} Although the alleged agreements between MedCorp and the elder care patients may not form the basis of a contractual claim, MedCorp relies on the case captioned Akron-Canton Waste Oil, Inc. v.Safety-Kleen Oil Serv., Inc. (1992), 81 Ohio App.3d 591, for its argument that a legally binding agreement is not required for recovery. In Akron-Canton, a competitor in the waste oil market was allegedly *Page 10 
distributing unfounded police theft reports to Akron-Canton customers which were typically solicited in an impromptu manner. The court noted that the "common law right of action protects all advantageous business relations, real or potential, from improper interference." (Emphasis in original.) Id. at 599.
 {¶ 37} MedCorp further relies on Fred Siegel Co., L.P.A. v. Arter Hadden, 85 Ohio St.3d 171, 1999-Ohio-260, wherein, the Supreme Court of Ohio adopted the Restatement of the Law 2d, Torts, Section 767, which sets forth the following factors to consider in determining whether an actor has acted improperly in intentionally interfering with a contract or prospective contract of another; such factors include:
 {¶ 38} "(a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties." Id. at 178-179.
 {¶ 39} MedCorp argues that the facts of the instant case are analogous to Fred Siegel. In Fred Siegel, a former associate of a law firm took client lists upon her departure. Although the representation contracts were found to be terminable at will, the court held that issues of fact remained as to whether the attorney and her new law firm acquired Fred Siegel client information by improper means and whether fee information was improperly disclosed. Id. at 180. *Page 11 
 {¶ 40} In the present case, MedCorp contends that based upon its affidavits in opposition to summary judgment, issues of fact remain as to whether MHP's actions were improper. Specifically, MedCorp relies on the affidavits of MedCorp officials (Tony Anteau, Ron Craig, and Paula Craig) which state that there were several instances where patients did not consent to transport which differed from the preference listed on the ADT or face sheet. There was no documentation presented of these instances. MedCorp also relies on the affidavit of Kevin Hoffman, MedCorp assistant director of communications, who stated that he had "personally spoken" with MHP's employees who indicated that all discharged patients are transported by LifeStar unless they specifically request otherwise. Hoffman also stated that the employees informed him that it is MHP's policy not to follow ADTs submitted by MedCorp.
 {¶ 41} Conversely, MHP presented the affidavits of several MHP's employees (Lisa Jacobs, Celine Collins, and Debra Delvaux), outlining the procedures used when a patient departs one of its hospitals. The respective policies and procedures were attached to the affidavits. Each affidavit denied any attempt to pressure or influence a patient to use appellee LifeStar's transport services. Further, LifeStar president Barbara Pasztor stated in her affidavit that as a competitor of MedCorp, LifeStar does not have any direct connection with patients prior to a request for transport. Pasztor stated that LifeStar does not utilize fraud, physical violence, or threats of physical violence in the procurement of its services. *Page 12 
 {¶ 42} Based on the foregoing, we find that the evidence is insufficient to create an issue of fact as to whether MHP improperly influenced any patient who had signed an ADT. Additionally, some of the statements in MedCorp's employees' affidavits are hearsay and are not admissible under Civ. R. 56(E). See State ex rel. Gilmour Realty, Inc. v.Mayfield Heights, 8th Dist. No. 90575, 2009-Ohio-29, ¶ 16. Moreover, whether or not MHP followed the procedures established in the 2005 mediation agreement between MHP and MedCorp was not a subject for summary judgment and is still pending before the trial court. Appellant's first assignment of error is not well-taken.
 {¶ 43} In MedCorp's second assignment of error, it argues that the trial court erred in determining that the MHP's actions were protected under the privilege of a business competitor. As set forth above, the elements of intentional interference with business relations prohibits one, without privilege, to induce or purposely cause a third party not to enter into or continue a business relationship. Juhasz v. Quik Shops,Inc., 55 Ohio App.2d at 57. The fair competition privilege is set forth in the Restatement of the Law, 2d, Torts, Section 768, which provides:
 {¶ 44} "(1) One is privileged purposely to cause a third person not to enter into or continue a business relation with a competitor of the actor if
 {¶ 45} "(a) the relation concerns a matter involved in the competition between the actor and the competitor, and
 {¶ 46} "(b) the actor does not employ improper means, and *Page 13 
 {¶ 47} "(c) the actor does not intend thereby to create or continue an illegal restraint of competition, and
 {¶ 48} "(d) the actor's purpose is at least in part to advance his interest in his competition with the other."
 {¶ 49} MedCorp and LifeStar do not dispute that they are business competitors and that any actions of LifeStar were in furtherance of its competitive interests. MedCorp argues that MHP has employed improper means by transporting discharged patients via LifeStar without first obtaining the patient's consent. MedCorp asserts that, based on the affidavit of Paula Craig, between 2004 and 2006, MedCorp transported approximately 150 to 200 patients monthly to a MHP hospital, and that the majority of those patients left the hospital by other means. MedCorp contends that they should have received at least 1,500 faxes documenting the change but that Craig received only 70. We again note that the issue of the consent forms and the policy of faxing the forms was part of the mediation agreement; whether MHP breached the mediation agreement is not currently before this court.
 {¶ 50} Upon review, and relying on our analysis of MedCorp's first assignment of error, we find that there is no genuine issue of fact regarding the fact that LifeStar's actions were privileged under the fair competition act. MedCorp's second assignment of error is not well-taken.
 {¶ 51} On consideration whereof, we find that substantial justice was done the party complaining and the judgment of the Lucas County Court of Common Pleas is *Page 14 
affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, J., William J. Skow, P.J., CONCUR. *Page 15 
[1] Though multiple, similar versions exist, the ADT attached to the complaint provides:
"I, (and/or my power of attorney), have entered into an agreement with MedCorp, Inc. and direct that MedCorp, Inc. be contacted for all ambulance or ambulette transportation arrangements. This includes any and all transports to and from other medical facilities, while a patient at the hospital, and at time of discharge or release. This is not only a predetermined choice in accordance with my rights under the `Freedom of Choice' section of the Social Security Act, but entitles me to contracted rates for transportation services. This directive shall be a continuing one." *Page 1